UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
CEMONE ANTENETTE BYNUM                          )
201 Q STREET, NE, APT 3141                      )
WASHINGTON, DC 20002,                           )
                                                )    Case No. _____
            Plaintiff,                          )
                                                )
        v.                                      )
                                                )
THE DISTRICT OF COLUMBIA                         )
VIA MURIEL BOWSER                               )
MAYOR OF THE DISTRICT OF                        )
COLUMBIA                                        )
350 PENNSYLVANIA AVENUE, NW,                    )
SUITE 316                                       )
WASHINGTON, DC 20004, and                       )
                                                )
DEPARTMENT OF BEHAVIORAL HEALTH                 )
FOR THE DISTRICT OF COLUMBIA                    )
VIA TANYA ROYSTER, MD                           )
DIRECTOR OF THE DEPARTMENT                      )
IN HER OFFICIAL CAPACITY                        )
DISTRICT OF COLUMBIA                            )
64 NEW YORK AVE., NE                            )
WASHINGTON, DC 20002,                           )
                                                )
            Defendants,                         )
                                                )
serve on:                                       )
                                                )
IRVIN B. NATHAN                                 )
ATTORNEY GENERAL OF                             )
THE DISTRICT OF COLUMBIA                        )
441 FOURTH STREET, NW                           )
WASHINGTON, DC 20001.                           )
_____ )

## COMPLAINT AND JURY DEMAND

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.

§§ 2000e-1, *et seq*., and Titles I through V of the American With Disabilities Act of 1990

("ADA"), 42 U.S.C. Section 12101, *et seq*.  Plaintiff alleges discrimination, retaliation,

intimidation, and harassment.  Plaintiff brings this action through her attorneys, Raouf M.

Abdullah and Associates, LLC, and Raouf M. Abdullah.

### JURISDICTION AND VENUE

1.      The jurisdiction of this Court is invoked to secure protection of and to redress deprivation

of rights secured by Title VII, 42 U.S.C. §§ 2000e, *et seq*. (providing for relief against

racial, age,  religious, national origin, and sex discrimination in employment), as well as

under the Americans with Disabilities Act.

2.      Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, and 1343.

3.      On June 28, 2016, the EEOC issued to Plaintiff its Dismissal and Notice of Rights.

4.      Plaintiff has complied with conditions precedent to jurisdiction under 42 U.S.C.A. §

2000e, et seq. Specifically, she filed her charge of employment discrimination and

retaliation with the EEO office for the District of Columbia Department of Behavioral

Health, and with the Washington Field Office of the Equal Employment Opportunity

Commission (the "Commission") within 42 days, which is well within the time required

by law.

5.      All of the actions that are the subject of this action occurred in the District of Columbia

and thus, venue is proper in this district.

**PARTIES**

6.    Plaintiff is an African American female resident of the District of Columbia, over the age

      of 50 years.

7.    Plaintiff suffers from an ADA recognized disability.

8.    In or about 2011, Plaintiff was diagnosed with Major Depression Disorder.

9.    In or about 2011, Plaintiff was diagnosed with Anxiety Disorder.

10.   In 2014, Plaintiff was diagnosed with Post Traumatic Stress Disorder.

11.   These disorders limit some of Plaintiff's major life skills, such as sleeping, thinking,

      communicating, and concentrating.

12.   Plaintiff is employed full time by Defendants.

13.   At all relevant times, Defendants were aware of Plaintiff's disabilities.

14.   Defendant Department of Behavioral Health ("DBH"), is an agency/subsidiary/division of

      the government of the District of Columbia.

15.   Defendant Dr. Tanya Royster is the Director of DBH.

16.   Defendants are employers, as that term is used in Title VII and the ADA.

17.   Defendants are state actors as that term in defined in the relevant law.

**FACTS COMMON TO ALL CLAIMS**

18.   Plaintiff has been employed by the District of Columbia's DBH since 2005.

19.   She was hired as a Data Management Specialist.

20.   She is presently a Project and Data Management Specialist.

21.   In her job, Plaintiff collects and summarizes findings regarding Metropolitan Police

      encounters with the potentially mentally ill, performs data analysis, and provides

technical assistance to clients.

22. Plaintiff also trains law enforcement officers on how to complete PD251-C Encounter Data Collection forms.

23. In 2012, Plaintiff filed a complaint with the EEOC against her employer, the Defendant, alleging age discrimination.

24. In, on or about August 12, 2012, the parties settled the complaint.

25. In 2014, Plaintiff filed a racial discrimination complaint against DBH with the DBH in-house EEO manager.

26. In January 2015, Plaintiff filed a complaint of racial discrimination against her Employer, DBH with the District of Columbia Office of Human Rights ("OHR").

27. In September 2015, Plaintiff received notification of the DC OHR decision.

28. After September 2015, Plaintiff was isolated by management.

29. Plaintiff was not included in team projects to the extent

30. After September 2015, Defendants denied Plaintiff opportunities to work on assignments for which she was qualified.

31. On numerous occasions in 2015, Defendants denied Plaintiff promotions for which she was qualified.

32. On Tuesday, March 29, 2016, Plaintiff attended a meeting of Defendants' Mental Health Statistics Improvement Program ("MHSIP").

33. The meeting started about 1:30 P.M.

34. Present at the meeting, among approximately six (6) persons, was Plaintiff's supervisor, Dr. Denise Wright, Ph.D.

35. On that date, Dr. Wright held the title of Applied Research Manager.

36. Also present at the meting was a male by the name of Colin Bissett.

37. Among Bissett's responsibilities, was to review and approve invoices that contractors submitted to DBH.

38. At 2:15 P.M., three persons left the meeting, leaving Dr. Wright, Colin Billett and Plaintiff.

39. Plaintiff was explaining to Billett that invoices he submitted were improperly filled out.

40. Plaintiff and Billett were facing one-another at a round table.

41. In response to Plaintiff's comments, Billett suddenly bolted out of his chair, causing his chair to violently hit the wall behind him.

42. Billett stood over Plaintiff, pointed his finger at her, and shouted "I'm sick of you."

43. He also shouted "you are immature."

44. He also shouted "you need to go back to the South where you came from."

45. Billett repeated these epateps several times.

46. While shouting at Plaintiff, Billett started to come around the table - approaching Plaintiff in a menacing manner.

47. Billett paced back and forth in the room for a while, still shouting insults at Plaintiff.

48. Plaintiff was still sitting in her chair while this is going on.

49. Plaintiff feared for her safety.

50. Plaintiff suffered a panic attack.

51. Plaintiff suffered emotional distress from the attack.

52. Dr. Wright did not intervene to stop Billett's assault on Plaintiff.

53.     Eventually, another employee entered the room and escorted Billett out of the room.

54.     Plaintiff expressed her intention call the police.

55.     Dr. Wright instructed Plaintiff to refrain from calling the police.

56.     Plaintiff filed an incident report.

57.     Plaintiff was frightened by and intimidated by Billett.

58.     Plaintiff sought medical assistance.

59.     Plaintiff's physicians instructed her to remain home until further notice.

60.     Plaintiff did not return to work until May 9, 2016.

61.     Plaintiff informed Defendants that she needed to take time off from work.

62.     Billett's attack on Plaintiff caused Plaintiff psychic injury.

63.     When Billett came around Plaintiff at her work area for non-work reasons, Plaintiff felt

        threatened.

64.     Plaintiff informed Defendants that she was threatened by unnecessary contact with Billett.

65.     On numerous occasions, after the attack, Plaintiff asked Defendants to order Billett not to

        harass, intimidate or annoy Plaintiff.

66.     On numerous occasions after the cited attack, Plaintiff requested that Defendants transfer

        her to a program area where she would not have to have contact with Billett.

67.     There were program areas to which Defendants could have transferred Plaintiff in which

        she would not have contact with Billett.

68.     Defendants could have easily transferred Plaintiff to an appropriate program area.

69.     Plaintiff's requests were denied.

70.     After he attacked Plaintiff on or about March 29, 2016, Billett kept coming around's

Plaintiff's desk to socialize with colleagues.

71.   On or about May 9, 2016, DBH issued Plaintiff a Letter of Warning.

72.   The letter of warning stated that Plaintiff's conduct on March 29, 2016, failed to comply
      with professional standards of conduct required of District of Columbia employees.

73.   The letter of warning stated that Plaintiff violated DBH's workplace violence prevention
      and response policy, which prohibits assaultive, intimidating, or harassing behavior in the
      workplace.

74.   The letter of warning stated that Plaintiff's conduct was "noted below."

75.   Nowhere in the letter of warning is a disclosure of the conduct that DBH considered to
      violate the aforementioned policy.

76.   The reprimand that Defendants issued to Plaintiff did not disclose what Plaintiff had
      allegedly done wrong.

77.   The letter stated that DBH would keep the letter in Plaintiff's personnel file up to three
      (3) years.

78.   The letter stated that DBH would consider the warning in determining the penalty for any
      future corrective or adverse actions taken against Plaintiff within three (3) years.

79.   The letter stated that failure to adhere to the warning may result in disciplinary action,
      including suspension, and up to Plaintiff's removal from District service.

80.   The letter informed Plaintiff that she had two (2) workdays to respond to the warning.

81.   The letter was signed by the aforementioned Dr. Denise Wright.

82.   Defendants actions on March 29, 2016, and May 9, 2016 have caused Plaintiff to relapse
      in her mental health treatment.

83.   Plaintiff fears that Defendants will continue to harass and intimidate her.

84.   On or about May 9, 2016, Plaintiff filed a charge of discrimination against Defendant

District of Columbia and the Department of Behavioral Health with the EEOC field

office in Washington, D.C.

85.   Defendants are aware of Plaintiff's mental health disabilities.

86.   Supervisor Dr. Wright was aware of Plaintiff's mental health disabilities.

## COUNT I
## DENIAL OF REASONABLE ACCOMMODATION
### (Violation of Title VII and ADA)

87.   Plaintiff adopts and incorporates all of the foregoing allegations into this claim.

88.   Plaintiff requested a reasonable accommodation in that she requested that Defendants

transfer her to an area in which she could avoid unnecessary contact with Colin Bissett.

89.   Plaintiff requested that a co-worker who had attacked her be prohibited from making

unnecessary contact with her.

90.   Defendants refused Plaintiff's requests.

91.   Granting Plaintiff's requests would not have caused Defendants undue hardship.

92.   The denial of Plaintiff's request for a reasonable accommodation caused Plaintiff injury.

93.   Plaintiff is a covered, qualified person.

WHEREFORE, Plaintiff demands damages from the Defendants:

A.   in the amount of $1,000,000 as compensatory damages; and

B.   in the amount of $1,000,000 as punitive damages; and

C.   in the amount of $100,000 as attorney's fees and costs;

D.   in the form of a reasonable accommodation;

E.      for lost wages; and

F.      for any other relief deemed appropriate by the Court.

## COUNT II
## RETALIATION
### (Violation of Title VII and ADA)

94.     Plaintiff adopts and incorporates all of the foregoing allegations into this claim.

95.     42 U.S.C. § 2000e-2(a)(1) prohibits the District of Columbia from engaging in

        discrimination in violation of Title VII.

96.     Defendants are also prohibited from violating the ADA.

97.     Plaintiff's actions in filing the two discrimination complaints against Defendants and

        pursuing the charges, including engaging in settlement negotiations with Defendants, was

        a protected activity under Title VII and the ADA.

98.     Plaintiff's protected activity was done in good faith.

99.     Defendants were aware of the protected activity because they engaged in negotiations

        leading to the settlement of at least one of the complaints.

100.    Section 2000e-3 of Title VII prohibits retaliation against employees who oppose

        discrimination, make charges of discrimination, testifying, assisting, or participating in

        enforcement proceedings against discrimination.

101.    The retaliatory actions of Defendants were proximate to Plaintiff's protected activity in

        that the retaliatory actions were pervasive, sustained and continuous since 2014.

102.    The proximity between the protected activity and Defendants' retaliation, provides

        sufficient grounds for an inference of causal connection.

103.    Defendants were aware that Plaintiff was the victim of a vicious attack by a co-worker.

104.   Defendants tacitly approved the co-worker's attack on Plaintiff, when Plaintiff's supervisor witnessed the attack but failed to take any action to stop it.

105.   Defendants issued a written reprimand to Plaintiff after permitting an employee to attack Plaintiff with impunity.

106.   Defendants failed to reveal to Plaintiff the conduct that Defendant claimed precipitated the reprimand/warning.

107.   Defendants threatened Plaintiff with sanctions including termination without informing Plaintiff of the alleged infractions.

108.   Defendants are aware that Plaintiff has psychological and psychiatric disabilities that made Plaintiff susceptible to harmed by unwarranted stress.

109.   Permitting a co-worked to viciously attack Plaintiff in the presence of her supervisor caused Plaintiff unwarranted stress and harm.

110.   Issuing Plaintiff an unwarranted and unsubstantiated warning/reprimand caused Plaintiff unwarranted stress and harm.

111.   Threatening Plaintiff with termination without just cause caused Plaintiff unwarranted stress and harm.

112.   Defendants true motive for permitted her co-worked to attack her was to retaliate against Plaintiff for having engaged in the protected  activity.

113.   Defendants true motive for issuing the unjustified and unwarranted reprimand/warning was to retaliate against Plaintiff for having engaged in the protected  activity.

114.   But for Plaintiff's above-referenced protected activity of filing complaints for alleged discrimination, Defendants would not have retaliated against Plaintiff.

115.    Defendants' actions were intentional.

WHEREFORE, Plaintiff demands damages from the Defendants:

A.    in the amount of $1,000,000 as compensatory damages; and

B.    in the amount of $1,000,000 as punitive damages; and

C.    in the amount of $100,000 as attorney's fees and costs;

D.    for lost wages; and

E.    for any other relief deemed appropriate by the Court.

## COUNT III
## UNLAWFUL EMPLOYMENT PRACTICE
### (Violation of Title VII and ADA)

115.    Plaintiff adopts and incorporates all of the foregoing allegations into this claim.

116.    The filing of the EEOC charge and pursuing that charge, including engaging in settlement negotiations with Defendant, was a protected activity under Title VII and the ADA.

117.    Defendants were aware of the protected activity since it engaged in negotiations leading to an agreement.

118.    The close proximity between the protected activity and Defendants' reprimand, provides sufficient grounds for an inference of causal connection.

119.    Defendant's tacit approval of the attack on Plaintiff that occurred on or about March 29, 2016, was done to retaliate against Plaintiff for having engaged in the protected activity.

120.    Defendant's reprimand of Plaintiff, which fails to cite performance reasons, was a pretext used in order to cover its true motive to retaliate against Plaintiff for having engaged in the protected activity.

121.    Defendants' actions were intentional.

WHEREFORE, Plaintiff demands damages from the Defendants:

A.      in the amount of $1,000,000 as compensatory damages,

B.      in the amount of $1,000,000 as punitive damages;

C.      in the amount of $100,000 as attorney's fees and costs;

D.      for lost wages; and

E.      for any other relief deemed appropriate by the Court.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

122.    Plaintiff adopts and incorporates all of the foregoing allegations into this claim.

123.    Defendants permitted and / or approved the attack on Plaintiff that occurred on or about

        March 29, 2016.

124.    Defendants were aware of Plaintiff's particular vulnerability due to her disability.

125.    Defendants' intentional actions caused Plaintiff emotional distress.

        WHEREFORE, Plaintiff demands damages from the Defendants:

A.      in the amount of $1,000,000 as compensatory damages,

B.      in the amount of $1,000,000 as punitive damages;

C.      in the amount of $100,000 as attorney's fees and costs;

D.      for lost wages; and

E.      for any other relief deemed appropriate by the Court.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all matters so triable.

                                    Respectfully submitted,

                                    _____ /s/ Raouf M. Abdullah

Raouf M. Abdullah, Bar No. 475700
Attorney for Plaintiff
Raouf M. Abdullah & Associates, LLC
14714 Main Street
Upper Marlboro, MD 20772
(301) 979-7427; (301) 769-6677 Fax
rma@rmalawfirm.com