**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CEMONE ANTENETTE BYNUM

        Plaintiff,

v.

DISTRICT OF COLUMBIA, *et al.*,

        Defendants.

No. 16-cv-1904 (EGS)

## MEMORANDUM OPINION

Plaintiff Cemone Antenette Bynum ("Ms. Bynum"), an African-American woman and employee of the District of Columbia's Department of Behavioral Health ("DBH"), brings this lawsuit against the District of Columbia (the "District") and DBH under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, claiming that she was harassed and retaliated against for reporting her male colleague's behavior. Ms. Bynum also alleges that DBH unlawfully refused to accommodate her disabilities by denying her requests to transfer to an appropriate program area.

Pending before the Court are Ms. Bynum's objections to Magistrate Judge Robin M. Meriweather's Report and Recommendation ("R & R"), which recommends that this Court dismiss without prejudice Counts II and IV of the First Amended

Complaint. *See* R & R, ECF No. 20 at 13.[1] Raising no objections to the R & R, the District asks this Court to adopt the R & R in its entirety. Upon careful consideration of the R & R, Ms. Bynum's objections, the District's response, and the relevant law, the Court concludes that Ms. Bynum sufficiently alleges a retaliation claim under Title VII (Count II), and Ms. Bynum plausibly states a hostile work environment claim under Title VII (Count IV). Therefore, the Court **ADOPTS IN PART** and **REJECTS IN PART** the R & R, **GRANTS IN PART** and **DENIES IN PART** the District's Partial Motion to Dismiss, and **DISMISSES WITHOUT PREJUDICE** Ms. Bynum's retaliation claim under the ADA. Because DBH is a *non sui juris* entity that lacks the capacity to sue or be sued, the Court **DISMISSES WITH PREJUDICE** Ms. Bynum's claims against DBH.

## I.    Background

The factual background and procedural history in this case are set forth in the R & R. *See* R & R, ECF No. 20 at 2-4.[2] To briefly summarize, in 2005, the District hired Ms. Bynum, an

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document.

[2] The Court accepts as true the allegations in the operative complaint for purposes of deciding this motion, and construes them in Ms. Bynum's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015). Ms. Bynum does not object to Magistrate Judge Meriweather's recitation of the alleged facts. *See* Pl.'s Objs., ECF No. 22 at 1-3.

African-American female, as DBH's Data Management Specialist. First Am. Compl. ("FAC"), ECF No. 14 at 3 ¶ 6, 4 ¶¶ 19-20. She later assumed a new role. *Id*. at 4 ¶ 21. At all relevant times, Ms. Bynum was employed at DBH as a Project and Data Management Specialist. *Id*. Ms. Bynum was diagnosed with anxiety disorder and major depression disorder in 2011, and then post-traumatic stress disorder in 2014. *Id*. at 3 ¶¶ 8-10. DBH was aware of Ms. Bynum's disabilities. *Id*. at 3 ¶ 13.

Between 2012 and 2015, Ms. Bynum filed complaints against her employer with the Equal Employment Opportunity Commission ("EEOC"), the District's Office of Human Rights ("OHR"), and DBH's manager of equal employment opportunity ("EEO"), alleging age and racial discrimination. *Id*. at 4 ¶¶ 24-27. The parties settled her EEOC complaint alleging age discrimination in 2012, and OHR rendered its decision in 2015 regarding Ms. Bynum's racial discrimination complaint. *Id*. at 4 ¶ 25. Following those events, DBH isolated Ms. Bynum, excluded her from team projects, denied her opportunities to work on assignments, and refused to promote her several times. *Id*. at 4-5 ¶¶ 29-32.

While at work on Tuesday, March 29, 2016, Ms. Bynum and approximately five other individuals attended a meeting for DBH's Mental Health Statistics Improvement Program. *Id*. at 5 ¶¶ 33, 35. At some point, Ms. Bynum, her supervisor, and her male colleague were the remaining three attendees in the meeting. *Id*.

at 5 ¶¶ 35, 37, 40. The male colleague, Colin Billett ("Mr. Billett"), was responsible for reviewing and approving invoices that were submitted by contractors to DBH. *Id*. at 5 ¶ 39.[3] After Ms. Bynum explained to Mr. Billett that certain invoices he had submitted were improperly filled out, *id*. at 5 ¶ 41, "[Mr.] Billett suddenly bolted out of his chair, causing his chair to violently hit the wall behind him," *id*. at 5 ¶ 43, and he "stood over [Ms. Bynum], pointed his finger at her, and shouted 'I'm sick of you,'" *id*. at 5 ¶ 44. Mr. Billett also shouted that "you are immature, you are childish, and stupid," *id*. at 5 ¶ 45, and "you need to go back to the South where you came from," *id*. at 5 ¶ 46.

Mr. Billett repeated those "epithets several times" during the incident, *id*. at 5 ¶ 47, and he started to approach Ms. Bynum as she was sitting in her chair before he began pacing back and forth around the room, *id*. at 5-6 ¶¶ 48-50. Ms. Bynum's supervisor, Dr. Denise Wright, Ph.D., did not intervene in the incident, which lasted more than ten minutes, and Dr. Wright instructed Ms. Bynum to refrain from calling the police. *Id*. at 6 ¶¶ 54-55, 58. Another employee entered the room and removed

---

[3] As noted in the R & R, the FAC refers to Ms. Bynum's male colleague as "Colin Bissett" and "Colin Billett." R & R, ECF No. 20 at 2 n.2; *see also* FAC, ECF No. 14 at 5 ¶¶ 37, 40. The Court assumes that "Colin Billett" is the correct spelling of Ms. Bynum's male colleague because Ms. Bynum's objections refer to him as "Colin Billett." Pl.'s Objs., ECF No. 22 at 1.

Mr. Billett. *Id*. at 6 ¶ 56. Ms. Bynum feared for her safety, suffering a panic attack and emotional distress as a result of the incident. *Id*. at 6 ¶¶ 51-53. On or about March 29, 2016, Ms. Bynum reported Mr. Billett's "assault" to her supervisor. *Id*. at 10 ¶ 104. Ms. Bynum also submitted an incident report, sought medical assistance, and returned to work on May 9, 2016. *Id*. at 6 ¶¶ 59, 61, 63.

When she returned to work, Ms. Bynum felt threatened by Mr. Billett's presence near her workspace, *id*. at 6 ¶ 67, and she reported to DBH the issue of Mr. Billett's "unnecessary contact" with her, *id*. at 6 ¶ 68. DBH denied her requests to transfer to an appropriate program area to avoid Mr. Billett. *Id*. at 7 ¶ 70. DBH refused to order Mr. Billett to not harass, intimidate, or annoy Ms. Bynum. *Id*. at 7 ¶ 69. Without a "business or employer related purpose," *id*. at 7 ¶ 76, Mr. Billett continued to approach Ms. Bynum's workspace, *id*. at 7 ¶ 78.

On or about May 9, 2016, DBH issued a "Letter of Warning" to Ms. Bynum, which was signed by Dr. Wright, stating that: (1) Ms. Bynum's conduct on the day of the incident failed to comply with professional standards of conduct for the District's employees, *id*. at 7 ¶ 80; (2) Ms. Bynum violated DBH's workplace violence prevention and response policy that prohibits "assaultive, intimidating, or harassing behavior in the

workplace," *id*. at 7 ¶ 81; and (3) failure to comply with the warning could result in disciplinary action, including suspension or dismissal, *id*. at 8 ¶ 87. The letter, however, did not include Ms. Bynum's alleged wrongdoing. *Id*. at 8 ¶ 84.

Based on these events, Ms. Bynum filed a charge of discrimination against the District and DBH with the EEOC on May 9, 2016. *Id*. at 8 ¶ 92. On September 26, 2016, Ms. Bynum brought Title VII and ADA claims against the District and DBH in this Court. *See generally* Compl., ECF No. 1. On August 8, 2017, this Court denied as moot the District's motion to dismiss the initial complaint in light of Ms. Bynum's First Amended Complaint, and granted DBH's motion to dismiss in view of Ms. Bynum's lack of opposition. Min. Orders of Aug. 8, 2017. Ms. Bynum's First Amended Complaint asserts four claims against the District and DBH: (1) denial of reasonable accommodation in violation of ADA ("Count I"); (2) retaliation in violation of Title VII ("Count II"); (3) retaliation in violation of Title VII ("Count III"); and (4) harassment in violation of Title VII ("Count IV"). FAC, ECF No. 14 at 9-14 ¶¶ 95-151.

On August 17, 2017, the District moved to dismiss Counts II and IV of the operative complaint. *See* Def.'s Partial Mot. to Dismiss, ECF No. 15. Ms. Bynum filed her opposition brief, *see* Pl.'s Opp'n, ECF No. 17, and the District filed its reply brief, *see* Def.'s Reply, ECF No. 19. Magistrate Judge Meriweather,

having been referred the District's motion and this case for
full case management, issued the R & R on January 26, 2018. *See*
R & R, ECF No. 20; *see also* Min. Order of Aug. 8, 2017.
Ms. Bynum submitted objections to the R & R, and the District
responded to her objections. The objections are ripe and ready
for the Court's adjudication.

## II. Standard of Review

### A. Objections to a Magistrate Judge's R & R

Pursuant to Federal Rule of Civil Procedure 72(b), a party
may file specific written objections once a magistrate judge has
entered a recommended disposition. Fed. R. Civ. P. 72(b)(1)-(2).
A district court "may accept, reject or modify the recommended
disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C.
§ 636(b)(1) ("A judge of the court may accept, reject, or
modify, in whole or in part, the findings or recommendations
made by the magistrate judge."). A district court "must
determine de novo any part of the magistrate judge's disposition
that has been properly objected to." Fed. R. Civ. P. 72(b)(3).
"If, however, the party makes only conclusory or general
objections, or simply reiterates his original arguments, the
Court reviews the [R & R] only for clear error." *Houlahan v.
Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (citation omitted).

Proper objections "shall specifically identify the portions
of the proposed findings and recommendations to which objection

7

is made and the basis for objection." LCvR 72.3(b).
"[O]bjections which merely rehash an argument presented to and
considered by the magistrate judge are not 'properly objected
to' and are therefore not entitled to de novo review." *Shurtleff
v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (quoting *Morgan v.
Astrue*, No. 08-2133, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30,
2009)).

### B. Motion to Dismiss

"A Rule 12(b)(6) motion to dismiss tests the legal
sufficiency of a plaintiff's complaint." *Herron v. Fannie Mae*,
861 F.3d 160, 173 (D.C. Cir. 2017). "[T]he complaint is
construed liberally in the plaintiffs' favor, and [courts] grant
plaintiffs the benefit of all inferences that can be derived
from the facts alleged." *Kowal v. MCI Comm'cns Corp.*, 16 F.3d
1271, 1276 (D.C. Cir. 1994). However, the court is "not bound to
accept as true a legal conclusion couched as a factual
allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

A complaint survives a motion under Rule 12(b)(6) only if
it "contain[s] sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially
plausible "when the plaintiff pleads factual content that allows
the court to draw [a] reasonable inference that the defendant is

liable for the misconduct alleged." *Id*. A complaint alleging facts that are "'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

## III. Analysis

The District advances two primary arguments for dismissal of the retaliation claim (Count II) and the hostile work environment claim (Count IV). *See* Def.'s Mem. of P. & A. in Supp. of Def.'s Partial Mot. to Dismiss ("Def.'s Mem."), ECF No. 15 at 5-7. First, Ms. Bynum fails to state a retaliation claim because her report to her supervisor about Mr. Billett's alleged "assault" does not constitute protected activity under Title VII, and "nothing in the Amended Complaint shows that the alleged assault was linked to [Ms. Bynum's] membership in a protected class." *Id*. at 6. Next, Ms. Bynum fails to state a claim for harassment because she does not allege sufficient facts that link the alleged harassment to her membership in a protected class. *Id*. at 7. For the reasons explained below, the Court rejects the recommendations in the R & R to dismiss the retaliation and hostile work environment claims under Title VII.

Before turning to Ms. Bynum's objections to the recommendations in the R & R, the Court first addresses the issue of whether DBH is a proper defendant in this case.

**A. DBH Lacks the Capacity to Sue or Be Sued**

Ms. Bynum sued both DBH and the District. Compl., ECF No. 1 at 3 ¶ 14. DBH moved to dismiss the department as a defendant on the ground that DBH is *non sui juris*. *See* Def.'s Mot. to Dismiss, ECF No. 7 at 1; *see also Non Sui Juris*, Black's Law Dictionary (11th ed. 2019) (Latin for "not of one's own right"). Because Ms. Bynum did not oppose the dismissal of DBH as a party, *see* Pl.'s Opp'n, ECF No. 9 at 1, this Court granted DBH's motion, Min. Order of Aug. 8, 2018. Nonetheless, Ms. Bynum named the District and DBH as defendants in the First Amended Complaint. *See* FAC, ECF No. 14 at 3 ¶ 15 ("Defendant [DBH] is an agency/subsidiary/division of the government of the District of Columbia."). The District argues—and Ms. Bynum does not dispute— that DBH is not a proper defendant. *See, e.g.*, Def.'s Mem., ECF No. 15 at 3 n.2; Pl.'s Opp'n, ECF No. 17 at 1-11; Pl.'s Objs., ECF No. 22 at 3. The Court agrees.

DBH is a department of the District. *See* D.C. Code § 7-1141.02(a). "[I]t is well-settled that a department or agency of the District of Columbia cannot sue or be sued in its own name in the absence of a statutory provision to that effect." *Whitehead v. D.C. Child Support Servs. Div.*, 892 F. Supp. 2d 315, 319 (D.D.C. 2012); *accord Hunt v. District of Columbia*, No. 02-7044, 2002 WL 1997987, at *1 (D.C. Cir. Aug. 29, 2002) (per curiam) ("The district court correctly concluded that

appellee Metropolitan Police Department is *non sui juris*."). The Court therefore finds that DBH is a *non sui juris* entity that cannot be sued in its own name. The District is the only proper defendant in this case. Accordingly, the Court **DISMISSES WITH PREJUDICE** DBH as a defendant.

### B. Retaliation Claim

The Court next considers Ms. Bynum's objections to the R & R, which recommends that her retaliation claim be dismissed on the ground that she fails to allege facts establishing or supporting an inference that her incident report about Mr. Billett's conduct concerned discrimination based on her race, color, religion, sex, or national origin. *See* R & R, ECF No. 20 at 8; *see also* Pl.'s Objs., ECF No. 22 at 6-9.

Title VII "both prohibits employers from engaging in employment practices that discriminate on the basis of race, *see* 42 U.S.C. § 2000e-2(a), and bars them from retaliating against an employee 'because [she] has opposed any [such] practice,' *id.* § 2000e-3(a)." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (citation omitted). "To establish a prima facie case of retaliation, a plaintiff must show (1) that [she] engaged in statutorily protected activity; (2) that [she] suffered a materially adverse action by [her] employer; and (3) that a causal link connects the two." *Cruz v. McAleenan*, 931 F.3d 1186, 1193-94 (D.C. Cir. 2019) (citation and internal

quotation marks omitted). "[A] plaintiff need not plead each
element of [her] *prima facie* retaliation case to survive a
motion to dismiss." *Jackson v. Dist. Hosp. Partners, L.P.*, No.
CV 18-1978 (ABJ), 2019 WL 3502389, at *5 (D.D.C. Aug. 1, 2019).

       As noted in the R & R, the District does not dispute that
Ms. Bynum has sufficiently alleged facts for the last two
elements of her retaliation claim. R & R, ECF No. 20 at 6 n.4.
The District concedes that Ms. Bynum alleges sufficient facts to
show that DBH took a materially adverse action against Ms. Bynum
when she complained to her supervisor about Mr. Billett's
conduct. *See, e.g.*, *id.*; Pl.'s Objs., ECF No. 22 at 6; Def.'s
Resp. to Pl.'s Objs. ("Def.'s Resp."), ECF No. 24 at 2-3.
Indeed, DBH "issued [Ms. Bynum] a reprimand and a warning
letter" after she reported Mr. Billett's conduct to her
supervisor. FAC, ECF No. 14 at 10 ¶ 106. And DBH "threatened
[Ms. Bynum] with sanctions including termination without
informing [her] of the alleged infractions," *id.* at 10-11 ¶ 114,
causing her "unwarranted stress and harm," *id.* at 11 ¶ 118. The
remaining issue is whether Ms. Bynum has alleged enough facts to
demonstrate the first element of her retaliation claim.

### 1. Ms. Bynum Has Pled Sufficient Facts That She Engaged in Protected Activity Under Title VII

       Ms. Bynum alleges that, on the day of the incident at
issue, Mr. Billett stood over her, pointed his finger at her,

and shouted comments directed at her. *See id*. at 5 ¶¶ 43-46.

Specifically, Mr. Billett shouted: (1) "I'm sick of you," *id*. at

5 ¶ 44; (2) "you are immature, you are childish, and stupid,"

*id*. at 5 ¶ 45; and (3) "*you need to go back to the South where

you came from*," *id*. at 5 ¶ 46 (emphasis added). Ms. Bynum

further alleges that "[Mr.] Billett repeated these *epithets*

several times." *Id*. at 5 ¶ 47 (emphasis added). Mr. Billett made

these "epithets" in the presence of Ms. Bynum's supervisor. *See

id*. at 5 ¶¶ 40-48, 6 ¶¶ 49-55, 11 ¶ 116. Dr. Wright did nothing,

*id*. at 6 ¶ 55, 10 ¶ 111, and Ms. Bynum remained in her chair

during the incident, *id*. at 6 ¶ 50. At some point, Ms. Bynum

submitted an incident report, *id*. at 6 ¶ 59, and she "reported

the assault by Mr. Billett against her to her supervisor," *id*.

at 10 ¶ 104. According to Ms. Bynum, her "action in reporting

the attack on her by [Mr.] Billet[t] was a protected activity

under Title VII and the ADA," *id*. at 10 ¶ 105, and "[b]ut for

[Ms. Bynum's] above-referenced protected activity of filing

complaints for alleged discrimination, [DBH] would not have

retaliated against [her]," *id*. at 11 ¶ 121.

The District argues that Ms. Bynum's incident report does

not qualify as "protected activity" under Title VII because

Ms. Bynum fails to link Mr. Billett's alleged assault to her

membership in a protected class, and Ms. Bynum cannot show that

she was "opposing or making a charge of discrimination in

13

violation of Title VII." Def.'s Mem., ECF No. 15 at 6; *see also* Def.'s Reply, ECF No. 19 at 1-2. It is undisputed that Ms. Bynum, an African-American woman, is a member of two protected classes. *See, e.g.*, Pl.'s Opp'n, ECF No. 17 at 10; Def.'s Reply, ECF No. 19 at 1-3. The R & R states that Ms. Bynum "suggests that the Court should infer that she engaged in protected activity simply because she is an African American woman." R & R, ECF No. 20 at 8. Ms. Bynum argues that "the threshold for oppositional conduct is not onerous" under Title VII, Pl.'s Opp'n, ECF No. 17 at 10; and she points to her "previous Title VII claim against her employer," *id.*

Magistrate Judge Meriweather articulated three reasons for why Ms. Bynum has failed to plead sufficient facts that she engaged in protected activity. R & R, ECF No. 20 at 8-9. First, "Ms. Bynum has failed to allege facts that establish or support an inference that her report regarding the incident with Mr. Billett concerned discrimination on the basis of her race, color, religion, sex, or national origin." *Id.* at 8. Next, Ms. Bynum "does not claim to have believed that Mr. Billett's conduct was discriminatory," *id.* (citing FAC, ECF No. 14 at 6 ¶ 59), and she does not "allege any facts attributing Mr. Billett's conduct to her membership in a protected class in Count II or elsewhere in the complaint," *id.* Finally, Ms. Bynum "does not contend that [her] past complaints [of discrimination]

played any role in DBH's decision to issue her the reprimand or letter of warning." *Id*. (citing Pl.'s Opp'n, ECF No. 17 at 10; FAC, ECF No. 14 at 4 ¶¶ 24-27, 7-8 ¶¶ 79-90). Magistrate Judge Meriweather recommends that this Court dismiss without prejudice the retaliation claim under Title VII in Count II. *Id*. at 8-9, 13.[4]

Ms. Bynum specifically objects to the R & R's findings that: (1) she fails to allege sufficient facts that support an inference that her incident report regarding Mr. Billett's conduct concerned discrimination; and (2) she fails to allege her belief that Mr. Billet's conduct was discriminatory. Pl.'s Objs., ECF No. 22 at 8-9. The Court will address each objection in turn.

---

[4] Magistrate Judge Meriweather found that Ms. Bynum failed to state a plausible retaliation claim under the ADA because the FAC "lacks any allegations indicating or supporting an inference that her complaint about Mr. Billet[t]'s conduct constituted protected activity under the ADA." R & R, ECF No. 20 at 10; *see also* FAC, ECF No. 14 at 9-10 ¶¶ 102-122. Neither party objects to these findings, *see, e.g.*, Pl.'s Objs., ECF No. 22 at 6-9; Def.'s Resp., ECF No. 24 at 2 n.1, and this Court agrees that Count II should be dismissed without prejudice to the extent Ms. Bynum asserts an ADA retaliation claim. Having found no clear error in this portion of the R & R, the Court therefore **ADOPTS** Magistrate Judge Meriweather's recommendation, and **DISMISSES WITHOUT PREJUDICE** Ms. Bynum's ADA retaliation claim in Count II.

### a. The Court Reasonably Infers from Mr. Billett's Alleged Epithets That Ms. Bynum's Incident Report Constitutes Protected Activity

Ms. Bynum has alleged sufficient facts for the Court to reasonably infer that DBH retaliated against her because she engaged in statutorily protected activity. *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 556. Ms. Bynum argues—and the Court agrees—that this Court can draw a reasonable inference that Mr. Billett's comment—"you need to go back to the South where you came from," FAC, ECF No. 14 at 5 ¶ 46—was a "racially tinged" comment given the historical context of the phrase. Pl.'s Objs., ECF No. 22 at 8. Ms. Bynum refers to the peculiar institution of slavery that stains our nation's history and the well-documented plight of African-Americans in migrating from the Jim Crow South to Northern cities in hopes of a better life. *Id*. at 6-8. Ms. Bynum argues that "the cat call 'go back to the South' is a racially tinged slur that conjures images of pitiful African American refugees forced out of the South," *id*. at 8, and "the term 'South' is a thinly veiled reference to ignorant, poor African Americans who are also referred to as 'Field Nig[**]s,'" *id*. at 6-7.

The District responds that Ms. Bynum's objections are "riddled with histrionics and irrelevant facts that are unsupported by the record." Def.'s Resp., ECF No. 24 at 2. The

District contends that Mr. Billett's phrase—"go back to the South where you came from"—cannot save Ms. Bynum's retaliation claim because it is not included in Count II, and Ms. Bynum did not raise that argument in her opposition brief. *Id.* at 3. And the District argues that Ms. Bynum fails to allege that Mr. Billett's "comment was related to her membership in a protected class or that she complained about it." *Id.*; *see also* Def.'s Mem., ECF No. 15 at 6.

But Count II "adopts and incorporates all of the forgoing allegations into [the Title VII retaliation] claim," FAC, ECF No. 14 at 9 ¶ 102, including the allegations in the "Facts Common to All Claims" section, *see id.* at 3-8 ¶¶ 19-94, 9-11 ¶¶ 102-122. At the motion to dismiss stage, the Court must construe the operative complaint liberally in Ms. Bynum's favor, view the factual allegations therein as a whole, accept them as true, and grant her the benefit of all inferences that can be derived from the alleged facts. *See Kowal*, 16 F.3d at 1276. Contrary to the District's assertion, Ms. Bynum's position is supported by Supreme Court precedent. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (per curiam) (explaining that a white manager's use of the word "boy" to refer to African-American employees can be evidence of racial animus).

In *Ash v. Tyson Foods, Inc.*, two African-American men worked as superintendents at a poultry plant, and they sought

17

promotions. *Id*. at 455. The white plant manager selected two white males for the vacancies. *Id*. The petitioners asserted, *inter alia*, Title VII claims, alleging that the defendant-corporation discriminated against them based on their race. *Id*. The Supreme Court noted that "there was evidence that [the] plant manager, who made the disputed hiring decisions, had referred on some occasions to each of the petitioners as 'boy.'" *Id*. at 456. The petitioners argued that the use of "boy" was evidence of discriminatory animus. *Id*. In holding that the use of the term "boy" may give rise to an inference of racial animus under certain circumstances, the Supreme Court reasoned that "[a]lthough it is true the disputed word will not always be evidence of racial animus, it does not follow that the term, standing alone, is always benign. The speaker's meaning may depend on various factors including context, inflection, tone of voice, local custom, and historical usage." *Id*.

Here, Mr. Billett made a series of comments to Ms. Bynum, an African-American woman, and she alleges that "[Mr.] Billett repeated [those] *epithets* several times," *id*. at 5 ¶ 47 (emphasis added). It is plausible that Mr. Billett's use of the phrase "you need to go back to the South where you came from," FAC, ECF No. 14 at 5 ¶ 46, was not benign when construing the allegations in the light most favorable to Ms. Bynum, *see Kowal*, 16 F.3d at 1276. Indeed, "[t]he phrase 'go back to where you

came from' has a similar historical context to the term 'boy.'"
*McCurdy v. Auburn Univ.*, No. 3:14CV226-MHT WO, 2015 WL 2064248,
at *5 (M.D. Ala. May 4, 2015) (analyzing failure-to-promote
claims under the same analytical framework for Title VII claims
and explaining that "[i]t would be unnatural phrasing, at best,
for a white manager to tell a black employee to 'go back where
you came from' and mean 'return to your work in the
stockroom'"). The District does not offer a more likely
explanation that challenges the inference that the phrase "you
need to go back to the South where you came from" is a racially-
tinged comment. *See Iqbal*, 556 U.S. at 681.

> **b. The Court Reasonably Infers From the Alleged
> Facts That Ms. Bynum Opposed Mr. Billett's
> Discriminatory Conduct**

Viewing the factual allegations as a whole, the Court can
draw a reasonable inference from the alleged facts that
Ms. Bynum opposed what she perceived as racial discrimination
when she reported Mr. Billett's conduct to her supervisor. *See*
FAC, ECF No. 14 at 3 ¶ 6, 5-6 ¶¶ 40-68, 10 ¶ 105, 11 ¶¶ 119-121.
The "opposition clause" in Title VII's anti-retaliation
provision makes it "'an unlawful employment practice for an
employer to discriminate against any of his employees . . .
because he has opposed any practice made an unlawful employment
practice by this subchapter.'" *Crawford v. Metro. Gov't of
Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009)

(quoting 42 U.S.C. § 2000e-3(a)). In *Crawford*, the Supreme Court explained that the ordinary meaning of the term "oppose" is "[t]o resist or antagonize . . .; to contend against; to confront; resist; withstand." 555 U.S. at 276 (citation omitted). "An employee's opposition to an employment practice is protected under Title VII when the employee 'reasonably and in good faith *believed* [the practice] was unlawful under the statute.'" *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 24 (D.C. Cir. 2013) (quoting *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012)); *see also Lott v. Not-for-Profit Hosp. Corp.*, 319 F. Supp. 3d 277, 282 (D.D.C. 2018) ("The employee's 'belief' that the employer's conduct was unlawful need not be certain.").

In this case, Magistrate Judge Meriweather found that "Mr. Bynum has failed to plead sufficient facts to satisfy even [the] modest threshold" that oppositional conduct is not onerous. R & R, ECF No. 20 at 8. Magistrate Judge Meriweather found that Ms. Bynum did not allege that she believed that Mr. Billett's conduct was discriminatory. *Id*. To support the conclusion that Ms. Bynum's operative complaint fails to indicate that she complained about discriminatory conduct when she reported Mr. Billett's conduct, Magistrate Judge Meriweather cited *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 202 (D.D.C. 2012) and *Moore v. Office of the Architect of the Capitol*, 828 F. Supp. 2d

254, 257 (D.D.C. 2011). R & R, ECF No. 20 at 8-9. *Peters* and *Moore* are distinguishable from this case.

In *Peters*, the court found that the informal complaints of two African-American employees to management did not constitute protected activity. 873 F. Supp. 2d at 202. The plaintiffs complained about a supervisor "assigning them too many cases and then penalizing them for a backlog when other caseworkers were not penalized." *Id*. The court reasoned that "[w]hile informal complaints to management may constitute protected activity, the plaintiffs must clearly complain about discriminatory treatment." *Id*. The court explained that the plaintiffs did "not allege that they complained about being targeted for [the] harsher treatment due to their race, age or national origin or even in retaliation for their prior complaints about her." *Id*.

In *Moore*, a white male employee alleged that he was unlawfully terminated in retaliation for "opposing defendant's refusal to accept 'Outstanding' ratings on performance evaluations for two white men over the age of forty and a Guatemalan man over the age of forty." 828 F. Supp. 2d at 256. The court found that the plaintiff "failed to allege that he ever communicated to his supervisors that he was opposing what he believed to be discriminatory conduct by them" because he "never told his supervisors that he believed their rejection of his 'Outstanding' ratings was the result of discrimination based on race, age, or nationality." *Id*. at 257. The court further explained that the

plaintiff "concede[d] that he was silent as to his opposition to defendant's allegedly discriminatory practices." *Id*.

Unlike the plaintiffs' informal complaints in *Peters*, 873 F. Supp. 2d at 202, Ms. Bynum filed an incident report, intended to report the incident to the police, reported Mr. Billet's "assault" to her supervisor, and requested that DBH order Mr. Billett to not harass, intimidate or annoy her following the "attack." *See* FAC, ECF No. 14 at 6 ¶¶ 57-59, 7 ¶ 69, 10 ¶¶ 104-105. And, unlike the white male employee in *Moore* who conceded that he was silent as to his opposition to his employer's allegedly discriminatory practices, *see* 828 F. Supp. 2d at 257, Ms. Bynum does not concede that she was silent in opposing Mr. Billett's epithets and his behavior. Here, the operative complaint contains factual allegations that support the inference that Ms. Bynum complained to her supervisor that Mr. Billett's words and actions were discriminatory based on her race. *See* FAC, ECF No. 14 at 5 ¶¶ 43-48, 6 ¶¶ 59-60, 7 ¶ 69, 10 ¶¶ 104-105, 11 ¶ 121. After she received medical assistance for the incident at issue, Ms. Bynum alleges that she returned to work on May 9, 2016. *Id*. at 6 ¶¶ 61-63. On that same day, Ms. Bynum filed an EEOC charge of *discrimination*. *Id*. at 8 ¶ 92.

Ms. Bynum's opposition of Mr. Billet's alleged discriminatory conduct is similar to the plaintiff's opposition of discrimination in *Bryant v. Pepco*, 730 F. Supp. 2d 25, 31

(D.D.C. 2010). In *Bryant*, the plaintiff alleged that his attendance at two informal meetings between management and other African-American employees about the lack of overtime compensation opportunities for them constituted protected activity under Title VII. *Id*. at 27, 31. In rejecting the defendant's argument that the plaintiff had to allege that "he said something at [those] meetings or that he did something more than merely attend," the court explained that the plaintiff "specifically allege[d] that the particular meetings he attended concerned allegations of racial discrimination" and that "his attendance at them certainly could be viewed by his supervisors as opposition to what he perceived as [the defendant's] discrimination against him and other [African-American employees]." *Id*. at 31.

Like the plaintiff's attendance at the meetings in *Bryant*, Ms. Bynum's actions of filing the incident report and reporting the incident to her supervisor can be viewed by DBH as opposition to what Ms. Bynum perceived as racial discrimination given that it is plausible Mr. Billett's comments were racial epithets. *See* FAC, ECF No. 14 at 6 ¶ 59, 10 ¶¶ 104-105. The alleged facts in this case present a stronger case than in *Bryant*. Ms. Bynum alleges that Mr. Billett repeated "epithets" several times during the incident at issue, *id*. at 5 ¶ 47; she reported Mr. Billett's "attack" to her supervisor, *id*. at 10 ¶¶

104-105; she filed an incident report, *id*. at 6 ¶ 59; and she "asked [DBH] to order [Mr.] Billett not to harass, intimidate or annoy [her]," *id*. at 7 ¶ 69. Viewing the factual allegations as a whole, the Court can draw a reasonable inference from the alleged facts that Ms. Bynum opposed what she perceived as racial discrimination at DBH when she reported Mr. Billett's conduct to her supervisor. *See id*. at 3 ¶ 6, 5-6 ¶¶ 40-60, 10 ¶¶ 104-105, 11 ¶¶ 119-121.

Although Ms. Bynum does not use the exact words that she "believed" that Mr. Billett's conduct was discriminatory in the operative complaint, R & R, ECF No. 20 at 8, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has made clear that "no 'magic words' are required," *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). The D.C. Circuit has instructed that "the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Id*. Ms. Bynum has alleged more than "just frustrated ambition" based on the alleged facts that she opposed Mr. Billett's epithets at DBH. *See id*. Ms. Bynum specifically alleges that Mr. Billett shouted, among other things, that she needed to "go back to the South where [she] came from." FAC, ECF No. 14 at 5 ¶ 46. As previously explained, Mr. Billett's use of that phrase may demonstrate racial animus based on multiple factors, including the phrase's historical usage, its context, Mr. Billett's

24

inflection, and his tone of voice. *See Ash*, 546 U.S. at 456

(explaining that modifiers or qualifications of racially neutral

words are not necessary in every circumstance to render the word

probative of bias). Mr. Billett's epithets targeted at

Ms. Bynum, an African-American woman, support the reasonable

inference that she reasonably believed Mr. Billett's conduct was

racially discriminatory when she reported the incident to her

supervisor. The Court therefore finds that Ms. Bynum has alleged

sufficient facts to give rise to a reasonable inference of

retaliation under Title VII. Accordingly, the Court rejects the

R & R's recommendation to dismiss without prejudice Ms. Bynum's

retaliation claim, and **DENIES** the District's Partial Motion to

Dismiss as to Count II.

### C. Hostile Work Environment Claim

The Court next turns to Ms. Bynum's harassment claim in

Count IV, which the R & R correctly construes as a hostile work

environment claim. *See, e.g.*, R & R, ECF No. 20 at 11 (citing

*Knight v. Mabus*, 134 F. Supp. 3d 348, 356 (D.D.C. 2015)); FAC,

ECF No. 14 at 14 ¶¶ 147-48; Pl.'s Objs., ECF No. 22 at 9-12.

To state a hostile work environment claim, Ms. Bynum must

show:

> (1) she is a member of a protected class;
> (2) she was subjected to unwelcome harassment;
> (3) the harassment occurred because of the
> plaintiff's protected status; (4) the
> harassment affected a term, condition, or

> privilege of employment; and (5) the employer
> knew or should have known of the harassment in
> question but nonetheless failed to either take
> steps to prevent it or afford the plaintiff
> prompt remedial action.

*Gordon v. Beers*, 972 F. Supp. 2d 28, 36 (D.D.C. 2013). "Although a plaintiff need not plead a *prima facie* case of hostile work environment in the complaint, the alleged facts must support such a claim." *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 69 (D.D.C. 2011) (citation and internal quotation marks omitted). Ms. Bynum must allege that her "employer subjected [her] to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citations and internal quotation marks omitted).

Here, Count IV alleges that Ms. Bynum was "harassed" at DBH in three ways: (1) "[b]y permitting [Mr.] Billet[t] to denigrate [Ms. Bynum] for more than ten minutes in a small meeting room," FAC, ECF No. 14 at 14 ¶ 145; (2) "[b]y permitting [Mr.] Billet[t] to stalk [her] while she worked," *id*. at 14 ¶ 146; and (3) "[b]y threatening [her] with sanctions, including termination of employment, without just cause," *id*. at 14 ¶ 149. Count IV asserts that Ms. Bynum was subjected to an "abusive work environment" at DBH in two ways: (1) "[b]y refusing to move [Ms. Bynum] to an area or a new assignment where she could avoid

unnecessary contact with [Mr.] Billet[t]," *id*. at 14 ¶ 147; and
(2) "[b]y issuing [Ms. Bynum] a warning/reprimand letter," *id*.
at 14 ¶ 148. Count IV "adopts and incorporates all of the
[previous] allegations into [the hostile work environment]
claim." *Id*. at 14 ¶ 144.

Magistrate Judge Meriweather recommends that Count IV be
dismissed without prejudice because Ms. Bynum has failed to
allege facts to support the third element of the hostile work
environment claim: the alleged harassment occurred because of
Ms. Bynum's protected status. R & R, ECF No. 20 at 13.
Magistrate Judge Meriweather recognized that Ms. Bynum, an
African-American woman, is a member of two protected classes.
*Id*. at 11 (citing 42 U.S.C. § 2000e-2(a)(1)). But Magistrate
Judge Meriweather refused to "simply assume that . . . a
connection [between the alleged harassment and Ms. Bynum's race
or sex] exists." *Id*. at 11-12 (collecting cases). Magistrate
Judge Meriweather disagreed with Ms. Bynum's argument that the
operative "complaint's incorporation by reference of allegations
made earlier in the complaint . . . purportedly demonstrate that
she was 'harassed . . . in numerous ways in connection with her
protected activity.'" *Id*. at 12 (quoting Pl.'s Opp'n, ECF No. 17
at 11). In considering Ms. Bynum's cited allegations, Magistrate
Judge Meriweather found that none of them "establish a basis to
infer that the alleged harassment at issue in Count IV was based

on her race or sex." *Id.*; *see also* FAC, ECF No. 14 at 4 ¶¶ 24-27, 4 ¶¶ 29-32, 5 ¶¶ 44-48, 6-7 ¶¶ 68-74, 7-8 ¶¶ 79-90. Magistrate Judge Meriweather found that Ms. Bynum fails to "connect the alleged harassment to her race or sex" because she does not "articulate *any* reason—discriminatory or otherwise—for the alleged harassment." R & R, ECF No. 20 at 13.

Ms. Bynum argues that the R & R disregards the previous factual allegations in the operative complaint that were incorporated in Count IV. Pl.'s Objs., ECF No. 22 at 9-10. To support her objection, Ms. Bynum points to: (1) her EEOC charge of discrimination "in response to the harassment that was inflicted upon her by [Mr.] Billet[t] and [DBH]," *id.* at 10 (citing FAC, ECF No. 14 at 8 ¶ 92); (2) her averment that the "retaliatory actions of [DBH] were proximate to [her] protected activity," *id.* (citing FAC, ECF No. 14 at 10 ¶ 109); and (3) her allegation that DBH's "motivation was to retaliate against [her] for . . . engaging in protected activity," *id.* (citing FAC, ECF No. 14 at 11 ¶ 119). Ms. Bynum argues that the operative complaint alleges that DBH engaged in discrimination based on her race, sex, and disability. *Id.* Ms. Bynum contends that the allegations placed the District on "notice that [Mr.] Billett and Dr. Wright were engaging in conduct that was proximately related to [Ms. Bynum's] numerous complaints of discrimination," which were "expressly based on [her] race and sex." *Id.* at 11.

The District does not dispute that Ms. Bynum is a member of two protected classes based on her race and sex. Def.'s Resp., ECF No. 24 at 3. Rather, the District argues that the operative complaint does not contain facts either alleging or supporting an inference that the alleged harassment occurred because of Ms. Bynum's race or gender. *Id*. at 3-4. The District contends that neither Ms. Bynum's EEOC charge of discrimination nor her argument that DBH engaged in discrimination based on her race, sex, and disability "save" her hostile work environment claim. *Id*. at 4. The District further contends that "[a]llowing [Ms. Bynum's] claim to proceed on this conclusory allegation would require the Court to impermissibly assume a link between the claimed harassment and [her] membership in a protected class." *Id*. But, as explained below, a reasonable inference can be drawn from the alleged facts, viewed as a whole, that connects the alleged harassment and Ms. Bynum's race.

### 1. The Court Reasonably Infers From the Alleged Facts That Ms. Bynum Was Harassed Because of Her Race

Ms. Bynum alleges that DBH created a hostile work environment by: (1) permitting Mr. Billett to assault her on March 29, 2016; (2) allowing Mr. Billett to stalk her while she worked at DBH; (3) refusing to transfer her or assign her to a different program area; and (4) threatening her with termination or sanctions without just cause. FAC, ECF No. 14 at 5-6 ¶¶ 33-

59, 10 ¶ 111, 14 ¶¶ 145, 147, 149-51; *see also* R & R, ECF No. 20 at 10. These alleged events flow from Mr. Billett's conduct on March 29, 2016, and these allegations have a connection to the alleged harassment because Mr. Billett allegedly shouted a racially-tinged comment and epithets during the alleged assault on the day of the incident at issue. *See* FAC, ECF No. 14 at 5 ¶¶ 43-47, 6-7 ¶¶ 67-70, 14 ¶¶ 144-150.

Although the Court acknowledges that Ms. Bynum could have stated her hostile work environment claim more artfully, Ms. Bynum does allege facts from which a reasonable inference can be drawn that the post-assault harassment occurred because of Ms. Bynum's race. The alleged facts, however, do not support an inference that the alleged hostility is linked to Ms. Bynum's sex. The Court declines to adopt the R & R's conclusion that the alleged facts do not connect the alleged harassment to Ms. Bynum's race, but adopts the conclusion that the alleged facts fail to connect the alleged harassment to her sex. *See* R & R, ECF No. 20 at 13.

### 2. Ms. Bynum's Allegations Are Sufficient to State a Hostile Work Environment Claim

Having found that a reasonable inference can be drawn from the alleged facts that the alleged hostility occurred because of Ms. Bynum's race, the Court next considers whether the alleged harassment is "sufficiently severe or pervasive to alter the

conditions of [Ms. Bynum's] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201. The Court must evaluate "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Id.*; *see also Baird*, 792 F.3d at 168 ("A hostile environment consists of several individual acts that 'may not be actionable on [their] own' but become actionable due to their 'cumulative effect.'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002)). Here, Ms. Bynum's alleged incidents of harassment are sufficient to state a hostile work environment claim. *See* FAC, ECF No. 14 at 5-6 ¶¶ 43-68, 7 ¶¶ 69-82, 8 ¶¶ 83-94, 14 ¶¶ 144-151.

To begin, "isolated incidents (unless *extremely serious*) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasis added); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280 (4th Cir. 2015) (holding that a jury could find the "uses of the 'porch monkey' epithet— whether viewed as a single incident or as a pair of discrete instances of harassment—were severe enough to engender a hostile work environment"). In *George v. Leavitt*, 407 F.3d 405, 416–17 (D.C. Cir. 2005), the D.C. Circuit held that statements by three employees over a six-month period telling a plaintiff to "go

back where she came from," separate acts of yelling and hostility, and allegations that the plaintiff was not given the type of work she deserved, were isolated instances that did not rise to the level of severity necessary to find a hostile work environment. Seven years later, however, the D.C. Circuit recognized that the "single incident [of using the n-word] might well have been sufficient to establish a hostile work environment." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (per curiam); *id.* at 580 (Kavanaugh, J., concurring) ("[I]n my view, being called the n-word by a supervisor—as [plaintiff] alleges happened to him—suffices by itself to establish a racially hostile work environment.").

In *Ayissi-Etoh*, an African-American employee brought various claims against his employer, including a hostile work environment claim under 42 U.S.C. § 1981. *Id.* at 574.[5] The plaintiff alleged that, after receiving a promotion, but being denied a salary increase, his manager told him: "For a young black man smart like you, we are happy to have your expertise; I think I'm already paying you a lot of money." *Id.* The plaintiff also alleged that the vice president, on a separate occasion, shouted at him to "get out of my office nigger." *Id.* The

---

[5] Courts analyze hostile work environment claims under Section 1981 and Title VII using the same analytical framework. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 n.3 (D.C. Cir. 2000).

plaintiff filed an EEOC complaint, his supervisor allegedly instructed him to either "drop the racial discrimination claim or be fired," and the plaintiff was later terminated. *Id.*

The D.C. Circuit held that the district court erred by granting summary judgment to the employer on the hostile work environment claim, concluding that "a reasonable jury could find [the manager's] and [vice president's] behavior sufficiently severe or pervasive as to create a hostile work environment." *Id.* at 577. The D.C. Circuit reasoned that the use of the n-word alone might have been sufficient to establish a hostile work environment claim, but the plaintiff alleged more than the "deeply offensive racial epithet." *Id.* The plaintiff also alleged: (1) the "young black man" statement; (2) the plaintiff "having to continue working with [the manager] for nearly three months, until [the manager] was ultimately fired"; and (3) the plaintiff being forced to continue working with the manager "made [the plaintiff] ill and caused him to miss work on at least one occasion." *Id.*

Like the plaintiff in *Ayissi-Etoh* who missed work and became ill after being forced to work with the manager who used the deeply offensive racial epithet, *see id.*, Ms. Bynum alleges that Mr. Billett's behavior, including his alleged racially-tinged comment to "go back to the South where you came from," resulted in her missing twenty-eight days of work, prompted her

to seek medical assistance, and caused her psychic injury, *see* FAC, ECF No. 14 at 6 ¶¶ 61-66. According to Ms. Bynum, she suffered emotional distress and a panic attack after the alleged incident with Mr. Billett. *Id.* at 6 ¶¶ 52-53. As in *Ayissi-Etoh*, Ms. Bynum alleges that she was forced to work in the program area where Mr. Billett threatened her with "unnecessary contact," *id.* at 6 ¶ 68, and Mr. Billett "kept coming around[] [her] desk" even after her multiple requests to DBH for a transfer to an appropriate program area, *id.* at 7 ¶ 75.

At the motion to dismiss stage, Ms. Bynum's allegations of Mr. Billett's behavior, the denial of her transfer request, the warning, and the reprimand letter sufficiently support that there was a significant level of offensiveness at DBH. Construing Mr. Billett's comments and the post-incident actions in the light most favorable to Ms. Bynum as reflecting discriminatory animus, *cf.* *Ash*, 546 U.S. at 456, the Court can infer that Mr. Billett's conduct and Dr. Wright's actions were so extreme and pervasive that they altered the conditions of Ms. Bynum's employment, *see Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet . . . by a supervisor in the presence of his subordinates." (citation and internal quotation marks omitted)).

Ms. Bynum alleges that Mr. Billett's presence near workspace her after the incident was stressful, intimidating, and annoying. FAC, ECF No. 14 at 7 ¶¶ 69, 77. Indeed, Ms. Bynum alleges that the actions that occurred on the day of the incident and on the day that she received the warning and reprimand caused her to "relapse in her mental health treatment." *Id*. at 8 ¶ 90. DBH allegedly did nothing in response to the alleged harassment. *See id*. at 14 ¶ 146. The Court therefore finds that Ms. Bynum's hostile work environment claim passes muster. *Cf*. *Ayissi-Etoh*, 712 F.3d at 577. Accordingly, the Court **DENIES** the District's Partial Motion to Dismiss as to Count IV.[6]

### IV. Conclusion

For the reasons set forth above, the Court **ADOPTS IN PART** and **REJECTS IN PART** the R & R, **GRANTS IN PART** and **DENIES IN PART** the District's Partial Motion to Dismiss, **DISMISSES WITHOUT PREJUDICE** Ms. Bynum's retaliation claim under the ADA, and **DISMISSES WITH PREJUDICE** Ms. Bynum's claims against DBH. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**January 30, 2020**

---

[6] Having found that Ms. Bynum's Title VII claims survive the District's partial motion to dismiss, the Court need not address Ms. Bynum's request for leave to amend the operative complaint pursuant to Federal Rule of Civil Procedure 15. *See* Pl.'s Objs., ECF No. 22 at 9, 11.